790 So.2d 102 (2001)
STATE of Louisiana
v.
Emanuel MILLS.
No. 01-KA-110.
Court of Appeal of Louisiana, Fifth Circuit.
June 27, 2001.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Alison Wallis, Ron Austin, Assistant District Attorneys, Gretna, Louisiana, for plaintiff/appellee.
Karen G. Arena, Louisiana Appellate Project PMB 181, River Ridge, Louisiana, for defendant/appellant, Emanuel Mills.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
*103 DALEY, Judge.
Defendant, Emanuel Mills, appeals from his conviction for armed robbery. On appeal, he assigns the following error:
1. The evidence was insufficient to sustain the verdict.
For the reasons which follow, we affirm.

PROCEDURAL HISTORY
On February 8, 2000, the Jefferson Parish District Attorney filed a Bill of Information charging defendant, Emanuel Mills, with robbing Kenneth Boudreaux while armed with a dangerous weapon, to wit: a gun, a violation of LSA-R.S. 14:64. Defendant was arraigned on March 13, 2000 and pled not guilty. He filed a Motion to Suppress Identification which was denied on June 2, 2000. On June 28, 2000, the case was tried before a 12 person jury, which found defendant guilty as charged. On July 14, 2000, the trial court sentenced defendant to imprisonment at hard labor for 22 years without benefit of parole, probation, or suspension of sentence. Defendant filed a Motion to Reconsider Sentence which was denied, and defendant gave oral notice to the court that he intended to appeal. On July 20, 2000, defendant filed a Motion to Appeal, which was granted.

FACTS
The following testimony was elicited at trial. Kenneth Boudreaux testified for the State that, on January 14, 2000, he came home from a work-related call at approximately 11:00 p.m. and pulled his truck under the carport. Boudreaux got out of his truck with his coffee mug, walked to the edge of the carport, and threw out the coffee. As he was walking back to the door, someone bumped into the back of him and said, "Give me your wallet. I've got a gun." Boudreaux stated that he looked to his left to see who it was and saw a black male. Boudreaux pushed against the male to get away from him and spun around. He told the male to "get out of here" and "you don't belong here." The male reiterated, "I've got a gun, give me your wallet." Boudreaux saw a small automatic gun in the male's left hand, and he was holding the gun sideways. Boudreaux testified that he yelled at the man again to "get out of here" and "get away." The man came toward Boudreaux again and Boudreaux threw the coffee mug at him. The man threw his hands up to block the mug, and when he did, Boudreaux lunged at him to try to subdue him. Boudreaux stated that the man got under him and threw him to the ground. Boudreaux fell on his coffee mug and hurt his ribs.
At that time, Boudreaux's wife opened the door, which was right next to where Boudreaux's head was, and she looked outside. The man pointed the gun at Boudreaux's wife and told her to get inside. Boudreaux told his wife to go inside and call 911, and she closed the door immediately. The man still demanded that Boudreaux give him his wallet. Boudreaux told him he couldn't because he was having trouble breathing and to take whatever he wanted. The man reached over to Boudreaux's left pocket and then his right rear pocket where he found the wallet. The man then took the wallet and ran off.
Boudreaux stated that the man was wearing a black hooded sweatshirt with some type of small cap or hat on under the hood. The man also had on dark green jogging pants pulled up to the knees. Boudreaux testified that he was able to see the man clearly because he had four-foot fluorescent lights under the carport and twin dusk-to-dawn floodlights in each corner of the front of his house. Boudreaux stated that the man was three to five feet away from him at one point during the robbery, and that he had no problem seeing the man's face. Boudreaux had $17.00 *104 in his wallet at the time it was stolen, which he remembers because, although he usually brings his lunch, once a week his wife gives him $20.00 to purchase lunch which costs $3.50. He stated that he had the change on him, therefore, he was sure that he had $17.00 on him at the time of the robbery.
After the male ran off, Boudreaux went inside his house and saw his wife on the telephone calling 911. Boudreaux stated that he got on the phone and gave a description of the male to the police. An officer arrived at Boudreaux's home approximately three or four minutes after the phone call. Boudreaux told the officer what had happened and gave the officer a description of the man who robbed him. Within five minutes, the police officer received a call from other officers that they had a suspect in custody. The officer left Boudreaux's house to go see the suspect and make sure he matched the description that Boudreaux had given him. In less than ten minutes, the officer returned and asked Boudreaux if he would take a ride to see the suspect and identify him. Boudreaux went with the officer to James Drive, which was a little over a half a block away. When Boudreaux got to James Drive, the officers had a suspect, and they brought him out in front of the lights. Boudreaux identified the individual as the person who had robbed him ten minutes earlier. The individual had a black-hooded sweatshirt on with the hood down, and he had a pair of green jogging shorts pulled up to his knees. Boudreaux testified that these were the same clothes that the robber had on ten minutes earlier. He made a facial identification as well as a clothing identification.
The police officers then went back to Boudreaux's house and asked his wife to come and identify the suspect. Boudreaux stated that after he identified the suspect, he did not talk to his wife. A second police car went and picked her up, and she was in a separate car from Boudreaux. Boudreaux identified the defendant in court as the man who robbed him.
Margaret Boudreaux, Kenneth Boudreaux's wife, testified for the State that, on January 14, 2000, she heard her husband pull his truck into the carport. She then heard him say, "get out of here, just go on." Margaret stated that she heard scuffling, so she walked to the door of the carport and opened the door. She said the man had her husband on the ground, and that he swung around and put the gun in her face and said, "get inside and close the door." Margaret testified that she went inside and called 911. The police officer arrived, and she and her husband gave him a description of the suspect. Her husband left with the police officer to go and identify the suspect. She received a call, and a police officer picked her up and took her to see the suspect. Margaret said she identified the suspect as the man she saw with the gun under the carport. Margaret also stated that she had seen the gun in the suspect's left hand, so the officer asked him if he was left-handed, and he responded affirmatively. Margaret identified the defendant in court as the man she saw under the carport.
Deputy Ricky Boudreaux[1] of the Jefferson Parish Sheriff's Office testified for the State that, on January 14, 2000, at approximately 11:00 p.m., he received a call involving an armed robbery and a description of the perpetrator. He looked in the neighborhood for a black male with a black sweater and dark jeans or pants and found someone fitting that description. Deputy *105 Ricky Boudreaux stated that when he first noticed the male, the male was walking "fast" in a northbound direction on James Street from Wabash Street. The male walked into an alleyway and disappeared. Deputy Ricky Boudreaux turned around and saw the male walking back out of the alleyway and that is when he stopped him. He advised headquarters that he had found someone fitting the description of the robber. Deputy Michael Boudreaux then came and transported the victim to him for identification of the suspect. Deputy Ricky Boudreaux stated that he believed the victim's wife showed up as well for an identification. He said there were two doors in the alleyway, and he and the other officer knocked on both doors and asked the occupants if they knew the male, and they said "no," and that they didn't know why the male was around there. Deputy Ricky Boudreaux said that he later learned that the male lived on Charleston Street, which was one block west of James Street. He identified the defendant in court as the man he apprehended on the evening of the robbery.
Deputy Michael Boudreaux of the Jefferson Parish Sheriff's Office testified for the State that, on January 14, 2000, he responded to an armed robbery at 2116 Potomac Drive at approximately 11:05 p.m. Headquarters gave him a description of the perpetrator, which was a black male, approximately six feet tall, and wearing dark clothing. When he got to 2116 Potomac in Jefferson Parish, he spoke to the victim, Kenneth Boudreaux, and got a description of the perpetrator. The victim told him the perpetrator was a black male in his late 20's or early 30's, approximately six feet tall, wearing a black hooded sweat-shirt with a cap on his head, and the hood was pulled up on top of his head, and that he was wearing dark colored jogging pants with the pants legs pulled up to the knees on both legs. Deputy Michael Boudreaux gave the more detailed description to headquarters over his radio.
Deputy Michael Boudreaux got a call from Deputy Ricky Boudreaux that he had found a suspect, so Deputy Michael Boudreaux went to see if the suspect matched the description given to him by the victim. Deputy Michael Boudreaux went back and picked up the victim and brought him to see the suspect, whom the victim identified as the man who robbed him. Deputy Michael Boudreaux identified the defendant in court as the man who the victim identified that night. The victim's wife was also transported to the scene, and she identified the suspect as the man she saw under her carport. Deputy Michael Boudreaux put the hat and the hood on defendant at the time of identification since that was how the suspect looked at the time of the commission of the crime. He stated that he patted down the defendant, but found no weapons; however, he did find $17.00 on him. They searched the area, but found no weapons.
Joyce Mills, defendant's wife, testified for the defense that, on January 14, 2000, at 7:30 p.m., defendant went to the laundry mat to wash clothes and came back about 8:30 p.m. She said defendant picked up her daughter at the Beauty Outlet about 9:00 p.m. and brought her home. She stated that she last saw the defendant about 10:00 p.m. that night sitting on the back of the car, drinking beer with his friend, Dwight. Joyce said she found out the following morning that defendant had been arrested.
Dwight Henry, a friend of defendant's for the past 15 years, testified for the defense that, on January 14, 2000, at approximately 9:00 p.m., he, defendant, and Frank drank beer at defendant's house. Dwight said he asked defendant to go to Kevin Lang's house on James Street to *106 collect money that Lang owed him. Dwight testified that the defendant left to do that at approximately 11:15 p.m. Henry stated that he and defendant both know other people who live on James Street.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues that the evidence was legally insufficient to sustain the verdict. Specifically, he contends that: 1) his identification by Mr. and Mrs. Boudreaux was unreliable; 2) if he had committed the robbery, he would not have been walking or "simply strolling down the street;" 3) although he was apprehended while wearing a cap, hooded sweatshirt and dark clothing, many people wear such clothing in January; 4) Boudreaux admitted to a police officer that he could not fully see the perpetrator's face due to the hood; 5) Mrs. Boudreaux only saw the robber for 10 to 15 seconds; 6) the police did not find Mr. Boudreaux's wallet or a gun on defendant's person or in the surrounding area; 7) the State did not produce defendant's clothing or the cash taken from him at the time of his arrest to corroborate the identification; and 8) the State did not impeach Dwight Henry who testified that defendant was running an errand to Kevin Lang's home at the time of his arrest. The State responds that the evidence was sufficient to sustain the conviction.
The standard for reviewing the sufficiency of evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and adopted by Louisiana in State v. Abercrombie, 375 So.2d 1170, 1177-1178 (La.1979), cert. denied, Abercrombie v. Louisiana, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). In Jackson, the court held that due process requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319, 99 S.Ct. 2781.
Defendant was convicted of armed robbery, a violation of LSA-R.S. 14:64, which, in pertinent part, provides:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
Under LSA-R.S. 14:64, the State must prove beyond a reasonable doubt: (1) a taking, (2) of anything of value, (3) from the person of or in the immediate control of another, (4) by the use of force or intimidation, (5) while armed with a dangerous weapon. State v. Wickem, 99-1261 (La.App. 5th Cir.4/12/00), 759 So.2d 961, 964, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839, citing State v. Cittadino, 628 So.2d 251, 255 (La.App. 5th Cir.1993). Encompassed in proving the elements of armed robbery is the necessity of proving the identity of the defendant as the perpetrator and when the key issue in the case is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Alexander, 98-993 (La. App. 5th Cir.3/10/99), 734 So.2d 43, 45, writ denied, 99-2138 (La.12/10/99), 751 So.2d 250.
In State v. Winfrey, 97-427 (La.App. 5th Cir.10/28/97), 703 So.2d 63, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481, this court set forth the following law regarding identification procedures:
A defendant challenging an identification procedure must prove that the identification was suggestive. LSC.Cr.P. art. 703(D); State v. Nguyen, 95-1055 (La.App. 5 Cir. 3/26/96), 672 So.2d 988, 992, writ denied, 96-1019 *107 (La.10/4/96), 679 So.2d 1377 and 96-2087 (La.10/7/96), 680 So.2d 639. Even if an identification procedure is suggestive, it is the likelihood of misidentification, not the mere existence of suggestiveness, which violates due process. State v. Culpepper, 434 So.2d 76, 78 (La.App. 5 Cir. 1982). As a general rule, one-on-one identifications are not favored. However, under certain circumstances, these identifications are permissible. State v. Jackson, 96-661 (La.App. 5 Cir. 4/9/97), 694 So.2d 440, 447. This is particularly true when the one-on-one identification is closely associated in time with the commission of the crime and where the suspect is returned to the location of the crime for immediate identification. State v. Robinson, 404 So.2d 907, 909 (La.1981). Such identifications promote fairness by assuring reliability and the prompt release of innocent suspects. State v. Robinson, supra.

The factors to be considered in assessing reliability include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the prior description of the criminal, the level of certainty displayed at the confrontation and the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); State v. Watson, 477 So.2d 788, 791 (La.App. 5 Cir.1985). Any corrupting effect of a suggestive identification procedure is to be weighed against these factors. Manson v. Brathwaite, 432 U.S. at 114, 97 S.Ct. at 2253; State v. Watson, 477 So.2d at 791.
In evaluating a challenge to an identification procedure, courts must consider the totality of the circumstances to determine whether an identification presents a substantial likelihood of misidentification. Manson v. Brathwaite, 432 U.S. at 113, 97 S.Ct. at 2252; State v. Meyers, 95-750 (La.App. 5 Cir. 11/26/96), 683 So.2d 1378, 1386, writ denied, State v. Delmore, 97-0015 (La.5/9/97), 693 So.2d 766.
Id. at 69-70.
In Winfrey, the defendant filed a Motion to Suppress Identification, arguing that the identification procedure was suggestive because he was alone in the backseat of a police car and in handcuffs at the time he was identified by the victim. Defendant contended that there was a substantial likelihood of misidentification because the witnesses could not have seen the robber's face since the perpetrator wore a ski mask. Approximately 30 to 45 minutes after the robbery, a police officer took the victim to the location where defendant had been stopped. At the suppression hearing, one of the victims testified that she identified defendant as the man who robbed her as soon as she saw him in the back of the police car. She further stated that none of the police officers suggested to her that defendant was the robber. The court found that, even if the identification was suggestive, the identification did not present a substantial likelihood of misidentification, because the victim had ample opportunity to view defendant at the crime scene, her prior description of defendant and his car were accurate, and the time between the robbery and confrontation was short. Furthermore, the victim identified defendant as the robber at the scene. Based on the foregoing, the court held that the identification was not suggestive nor was there a substantial likelihood of misidentification. State v. Winfrey, 703 So.2d at 70.
In State v. Johnson, 99-450 (La.App. 5th Cir.8/31/99), 742 So.2d 713, defendant argued that the officer's identification of him as the robber could have been mistaken, because the officer testified that he *108 was very scared at the time and only saw the robber for a very short time. The court found that, although the case involved a one-on-one identification, the officer identified defendant within ten minutes of the incident and a short distance from the scene of the crime. When defendant was apprehended he was wearing the clothing the officer had described. Further, the officer had a good opportunity to view defendant at the time of the incident. The court found that there was no evidence in the record that the identification was suggestive, or that it was unreliable. Moreover, the initial identification was supported by the officer's subsequent identification of defendant in court. Therefore, the court held that the out-of-court identification did not violate his constitutional rights and that the State presented sufficient evidence to affirm the jury's finding of guilt. Id. at 715.
In the instant case, to establish that the defendant was the person who committed the armed robbery, the State presented the testimony of the victim, Mr. Boudreaux, and his wife, Mrs. Boudreaux. Mr. Boudreaux testified that he was three to five feet away from defendant at one point during the robbery, that he had no problem seeing defendant's face, and that the area was well-lit. Mr. Boudreaux stated that the defendant was wearing a black hooded sweatshirt with a cap or hat on under the hood, and dark jogging pants pulled up to the knees, the same clothes he was wearing when he was apprehended by the police one-half block away from the crime scene. Mr. Boudreaux stated the police took him to the area where the suspect was found within ten minutes of being robbed. He unequivocally testified that the defendant was the person who held a gun in his left hand and demanded that Mr. Boudreaux give him his wallet, and he identified defendant in court as the perpetrator.
Mrs. Boudreaux also unequivocally identified the defendant shortly after the crime and in court as the perpetrator of the armed robbery. She was brought to the area where the suspect was apprehended in a separate police car. She was not allowed to speak to her husband before she identified the man apprehended by the police. Based on the factors outlined in State v. Winfrey, supra, and the facts surrounding the identification of the defendant, we find that the identifications were reliable. Both of the witnesses saw the defendant's face and clothing under a well lit carport. There were two separate identifications by Mr. and Mrs. Boudreaux of the defendant within ten minutes of the crime at an area only a block and a half away. The description of the victim and his wife accurately depicted the male apprehended by the police.
Defendant also argues that the police did not find Mr. Boudreaux's wallet or a gun on defendant's person or in the surrounding area, and that the State did not produce defendant's clothing or the cash taken from him at the time of his arrest to corroborate the identification. However, this court has found that the production of a weapon or other physical evidence is not required as long as the State can establish all of the elements of armed robbery beyond a reasonable doubt through the testimony of its witnesses. State v. Wickem, 759 So.2d at 966.
After hearing the testimony and evaluating the credibility of the witnesses, the jury chose to believe the State's witnesses. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of the witnesses will not be re-weighed on appeal. State v. Rowan, 97-21 (La.App. 5th *109 Cir.4/29/97), 694 So.2d 1052, 1056. We find that the evidence presented in this case, considered in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of armed robbery.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). The review reveals no errors patent in this case.
For the foregoing reasons, the defendant's conviction is affirmed.
AFFIRMED.
NOTES
[1] It is noted that Kenneth Boudreaux and his wife, Margaret Boudreaux, are not related to either Deputy Ricky Boudreaux or Deputy Michael Boudreaux.