917 So.2d 567 (2005)
STATE of Louisiana
v.
Shannon HURD.
No. 05-KA-258.
Court of Appeal of Louisiana, Fifth Circuit.
November 29, 2005.
Rehearing Denied January 12, 2006.
*568 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Vincent Paciera, Jr., Ken J. Dohre, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, State of Louisiana, Gretna, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Attorney at Law, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Defendant appeals his conviction for first degree robbery. For the reasons that follow, we affirm.
Defendant, Shannon Hurd, was charged in a bill of information on September 5, 2003 with first degree robbery in violation of LSA-R.S. 14:64.1. Hurd pled not guilty and filed several pre-trial motions, including motions to suppress the identification and evidence, both of which were denied after hearing. Hurd proceeded to trial on June 22, 2004 where a twelve-person jury found him guilty as charged by a vote of eleven to one. Hurd was sentenced to thirty years at hard labor without the benefit of parole, probation, or suspension of sentence.
The State filed a multiple offender bill of information alleging Hurd to be a fourth felony offender. After a hearing, Hurd was found to be a fourth felony offender and was resentenced as a multiple offender *569 to life imprisonment without the benefit of parole, probation, or suspension of sentence.[1]
At approximately 6:00 p.m. on July 7, 2003, Carolyn Fleming was in her home on Moisant Street in Kenner with her husband and three grandchildren when a man walked through the unlocked front door. Mrs. Fleming asked the man what he was doing in her home and the man replied that he was there to rob her and that he wanted her money. Mrs. Fleming could not see the man's hands as he had one hand under his shirt pointing at her which led Mrs. Fleming to believe he was pointing a gun at her. Mrs. Fleming went to her husband, who was in the living room, and told him to give the man his money as he was there to rob them. Mr. Fleming reached into his pocket and gave the man between $12 and $13 in the denomination of a $10 bill and two to three $1 bills. Mrs. Fleming then gave the man all the money in her purse, which was $1. Thereafter, the man walked out of the house.
Mrs. Fleming immediately called 911 to report the robbery. She described the perpetrator as a black male wearing a green striped shirt. Officer Larry Cosse was dispatched to the call. En route and within three blocks of the crime scene, Officer Cosse observed Hurd who matched the broadcasted description of the perpetrator. Officer Cosse and his riding partner, Officer Russo, approached defendant with their guns drawn and instructed him to show his hands. Hurd fled and a pursuit followed. After a struggle, Hurd was detained. A pat down search revealed a $10 bill in the pocket of his pants. When Hurd was placed into the police unit, four $1 bills fell from his person.
Within fifteen to twenty minutes after the robbery, the victims were brought to the location where Hurd was being detained and identified him as the person who robbed them. Additionally, the victims' nine-year-old granddaughter, who saw the perpetrator in the home, was brought to the location where Hurd was being detained and identified him as the person who robbed her grandparents.
In Hurd's first two assignments of error he argues the evidence is insufficient to support his conviction of first degree robbery because the conviction was based on unreliable out-of-court identifications. Hurd contends the victims' identifications are unreliable because they were based exclusively on clothing, as opposed to face recognition or physical features, and because the one-on-one identifications were unduly suggestive. As such, Hurd asserts the State failed to prove he was the perpetrator of the robbery beyond a reasonable doubt.
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt.[2]
Proof of first degree robbery requires a showing that the defendant took something of value from another while leading the victim to reasonably believe he was armed with a dangerous weapon. LSA-R.S. 14:64.1. Encompassed in proving the elements of the offense is the necessity of proving the identity of the defendant as the perpetrator. When the key issue in the case is identification, the State is required *570 to negate any reasonable probability of misidentification in order to carry its burden of proof under Jackson.[3]
To prove identification in this case, the State offered the testimony of Carolyn Fleming, one of the victims, who gave the initial description of the perpetrator and identified defendant as the perpetrator shortly after the incident. Mrs. Fleming first described the perpetrator to the 911 operator as a black male wearing a striped green shirt and baggy blue jeans. She later identified defendant as the perpetrator based on his clothes, which were the same as the clothing worn by the perpetrator. In addition to the striped green shirt and baggy blue jeans, Mrs. Fleming identified Hurd based on his maroon "drawers" which were visible when Mrs. Fleming asked if Hurd's shirt could be lifted during the identification procedure.
The State also offered the testimony of Jack Fleming, the other victim, who told the police the perpetrator was wearing a green and white striped shirt. Mr. Fleming identified Hurd as the perpetrator within twenty minutes of the robbery based on Hurd's clothing. When shown the shirt Hurd was wearing at the time of his arrest, Mr. Fleming stated it was the same shirt the perpetrator wore but admitted on cross-examination that the shirt did not have any white on it.
The victims' granddaughter, K.C., who was at the home during the robbery, testified the perpetrator was wearing a green shirt with black stripes, baggy blue jeans, and a cap. She also identified Hurd as the perpetrator within minutes after the robbery. She stated she recognized Hurd as the man who committed the robbery based on his clothes.
All three witnesses stated they were unable to identify the perpetrator by his face and were not asked to make an incourt identification of defendant as the perpetrator.
Officer Larry Cosse testified that Hurd was first spotted approximately three blocks from the crime scene wearing the same clothes described by Mrs. Fleming to the 911 operator. When confronted by the police, Hurd fled. During the chase, a $1 bill fell from Hurd's pants. Once Hurd was subdued, a pat down search was conducted and a $10 bill was found in his pocket. Four $1 bills subsequently fell from Hurd's person when he was placed into the police unit. Within twenty minutes of the robbery, both victims and their granddaughter positively identified Hurd as the perpetrator.
Hurd argues this evidence is insufficient because the out-of-court identifications were unreliable. Prior to trial, Hurd filed a motion to suppress identification, which was denied after a hearing. The trial court specifically found the lineup procedure was constitutional.
A defendant challenging an identification procedure must prove that the identification was suggestive and there was a substantial likelihood of misidentification.[4] It is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness.[5] "Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony."[6] Factors to consider *571 in assessing the reliability of an identification include: 1) the witness' opportunity to view the criminal at the time of the crime, 2) the witness' degree of attention, 3) the accuracy of his prior description of the criminal, 4) the level of certainty demonstrated at the confrontation, and 5) the time between the crime and the confrontation.[7]
Generally, one-on-one identifications are not favored. However, such an identification procedure is permissible under certain circumstances. For example, one-on-one identifications are justified when the accused is apprehended within a relatively short period of time after the occurrence of the crime and has been returned to the scene for immediate identification.[8] Such prompt confrontations between the defendant and the victim promote fairness by "ensuring the reliability of the identification and the expeditious release of innocent suspects."[9]
Defendant argues the one-on-one identification procedure was suggestive because the identification was based solely on clothing and not physical characteristics or face recognition.
In State v. Valentine,[10] the Fourth Circuit upheld identifications by two witnesses to an armed robbery of a restaurant that were based on the similarity of clothing between the defendant and the perpetrator. The defendant was apprehended within thirty minutes of the crime one and a half blocks from the restaurant based on the broadcasted description of the perpetrator. He was driven back to the restaurant where he was separately viewed by the two witnesses as he sat handcuffed in the back of the police car. One witness identified the defendant solely based on his clothing and the other witness identified the defendant based on his clothing and his eyes, which the witness stated he could see under the ski mask.
Similarly, in the present case, Hurd was apprehended within minutes after the crime only three blocks from the robbery. Within fifteen to twenty minutes after the crime, the victims and their granddaughter were separately brought from the crime scene to the location where Hurd was apprehended. When the victims arrived, Hurd was standing in the street among several police officers. Both victims and their granddaughter made positive identifications of Hurd as the perpetrator of the robbery.
After a review of the record, we find that this one-on-one identification was not suggestive. Furthermore, applying the Manson factors, it does not appear there was a likelihood of misidentification. The victims had a clear view of the perpetrator during the robbery. Although neither victim focused on the perpetrator's face, both victims' description of the perpetrator's clothing matched that worn by Hurd. The perpetrator was described as wearing a green striped shirt and baggy blue jeans, not a common combination. Both victims, and their nine-year-old granddaughter, immediately identified defendant as the perpetrator when they arrived at the location where defendant was apprehended, only fifteen to twenty minutes after the robbery. Thus, it appears the victims' identification of defendant as the perpetrator was reliable.
*572 Hurd asserts the identifications were also unreliable because the victims' descriptions of the perpetrator's clothes were inconsistent. Specifically, he argues Mr. Fleming stated the perpetrator was wearing a green and white striped shirt while the granddaughter stated the perpetrator was wearing a green and black striped shirt. Defendant also points out that the granddaughter stated the perpetrator was wearing blue jean shorts as opposed to the blue jeans he was wearing at the time he was apprehended.
In State v. Thomas,[11] this Court found the out-of-court identifications of the defendant by two witnesses were reliable despite minor discrepancies in the witnesses' description of the perpetrator's clothing. Although one witness described the perpetrator as wearing a bluish colored sweat suit and the other witness stated the sweat shirt was red, this Court noted the descriptions contained "accurate details for the most part."[12] This Court also noted both witnesses made immediate identifications when shown the photographic lineup approximately one month after the robbery.
In the present case, the jury heard all of the evidence and was fully aware of the minor inconsistencies regarding the clothing. After hearing the evidence, the jury chose to believe the victims' testimony identifying defendant as the perpetrator of the robbery. It is the jury's function to determine the weight of the evidence bearing on the defendant's identification. It is not the appellate court's function to reevaluate the credibility choices made by the jury.[13] Viewing the evidence in the light most favorable to the prosecution, a rational trier could have found beyond a reasonable doubt that defendant was the perpetrator of the crime.
As requested by defendant, the record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux,[14] and State v. Weiland.[15] The following matter is noted.
There is a discrepancy between the sentencing minute entry and the transcript. At sentencing, defendant was sentenced to thirty years without the benefit of parole, probation, or suspension of sentence but the commitment does not reflect the restriction of benefits. Generally, where there is a discrepancy between the minute entry and the transcript, the transcript prevails.[16] However, because the mandatory restriction on the eligibility of benefits is self-activating, no remedial action is necessary.[17]
Accordingly, for the foregoing reasons, defendant's conviction is affirmed.
AFFIRMED.
NOTES
[1] Although defendant filed a motion for appeal after the multiple offender proceedings, he did not raise any issues relating to the multiple offender proceedings on appeal.
[2] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
[3] State v. Taylor, 99-296 (La.App. 5 Cir. 7/27/99), 740 So.2d 216, 222, writ denied, 99-2609 (La.3/17/00), 756 So.2d 322.
[4] State v. Mills, 01-110 (La.App. 5 Cir. 6/27/01), 790 So.2d 102, 106.
[5] Id.
[6] State v. Biglane, 99-111 (La.App. 5 Cir. 5/19/99), 738 So.2d 630, 635.
[7] Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253-2254, 53 L.Ed.2d 140 (1977); State v. Mills, supra, at 107.
[8] Id.
[9] State v. Clennon, 98-1370 (La.App. 5 Cir. 6/30/99), 738 So.2d 161, 164.
[10] 570 So.2d 533 (La.App. 4 Cir.1990).
[11] 04-1341 (La.App. 5 Cir. 5/31/05), 904 So.2d 896.
[12] Id.
[13] State v. Spencer, 93-571 (La.App. 5 Cir. 1/25/94), 631 So.2d 1363, 1370, writ denied, 94-0488 (La.2/3/95), 649 So.2d 400.
[14] 312 So.2d 337 (La.1975).
[15] 556 So.2d 175 (La.App. 5 Cir.1990).
[16] State v. Lynch, 441 So.2d 732, 734 (La. 1983).
[17] State v. Taylor, 04-346 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595-596.