986 So.2d 89 (2008)
STATE of Louisiana
v.
Alton SPURLOCK.
No. 08-KA-163.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 2008.
*90 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Shannon Swaim, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and GREG G. GUIDRY.
THOMAS F. DALEY, Judge.
Defendant, Alton Spurlock, appeals his conviction for simple burglary, a violation of LSA-R.S. 14:62. After a one-day trial, the defendant was found guilty as charged. The trial court sentenced the defendant to ten years at hard labor with credit for time served. In addition, the trial judge ordered that the defendant's sentence run consecutively to any other sentence served by the defendant. On February 5, 2007, the *91 State filed a multiple Bill of Information alleging the defendant to be a fourth felony offender.
On appeal, defendant argues that the evidence related to his identification was insufficient to support his conviction beyond a reasonable doubt. For the following reasons, we affirm defendant's conviction.

FACTS
Anthony Mortillaro testified that he lives in a house located at 653 Wright Avenue in Terrytown. Mortillaro testified that when he returned after evacuating for Hurricane Katrina, his shed located in the backyard was in the same condition as it was prior to the storm. Mortillaro testified that he stored his chain saw, weed-eater, and lawnmower in his shed.
Mortillaro testified that twenty minutes before the burglary, he opened his shed and unlocked the gate through which the backyard is accessed in preparation to cut his grass. Then Mortillaro went into his garage for five or ten minutes. According to Mortillaro, when he returned to the shed at approximately 12:00 p.m., he saw a Huffy-style or mountain-style bicycle lying on the ground and near the walkway located between his house and his neighbor's house. The bicycle had not been there when he went inside. Mortillaro became nervous because he knew someone else was there. Mortillaro got a gun out of his van and walked down the walkway to his backyard in order to see who was there.
Approximately ten feet from his shed, Mortillaro saw someone walking toward him. After walking an additional 10 to 15 feet, Mortillaro realized that the person, whom he later identified as the defendant, was carrying some of his possessions that were stored in his shed including his chain saw and welding shield. Mortillaro admitted that he did not see the defendant enter or exit his shed. However, Mortillaro testified that the defendant would have to have walked into the shed in order to get his chain saw because it was stored in the back corner.
Mortillaro testified that the defendant did not see the gun at first because the gun was pointed down toward the ground. When the defendant realized that Mortillaro had a gun, he stopped and dropped both items on the side of the house before walking to the side of Mortillaro. After Mortillaro told the defendant, "you better get the `F' out of here," the defendant walked slowly to his bike, got on his bike, and rode away in the direction of Stumpf Boulevard. Mortillaro admitted that the defendant's hands were empty when he rode away. Mortillaro did not see the defendant with the weed-eater or a bag.
Mortillaro identified the defendant in court as the person who took his possessions from his shed. Mortillaro testified that he had no doubt that the defendant was the person who burglarized his shed. Mortillaro testified that he did not know the defendant, and had not given anyone including the defendant permission to go into his shed. According to Mortillaro, the defendant's hairstyle was "mainly what stuck out in [his] mind." The defendant's hairstyle on the date of the burglary looked the same as it did at trial, only shorter. However, the defendant was wearing a cap during the burglary.
Mortillaro testified that he did not call the police because he was just going to let it go. However, shortly after the burglary, while he was working in the front of his house, he saw two police cars at the intersection of Cooper and Wright Avenue. Mortillaro ran down the street, and told the police what happened. Mortillaro testified that he described the defendant as a six-foot tall black male wearing a cap. His description did not mention facial hair. *92 Mortillaro could not remember if he mentioned the defendant's bicycle. The police informed Mortillaro that they had stopped someone in response to a call about a black male wearing a white shirt on a bicycle, who was snooping around another house.
Mortillaro testified that, approximately 10 to 15 minutes later, he was taken to the intersection of Stumpf and Wright where he identified the defendant as the person who burglarized his shed. According to Mortillaro, Stumpf is less than a quarter mile from his house. Mortillaro also gave the police a written statement on the same day. Mortillaro testified that he had seen other black men riding bicycles that day. Mortillaro was absolutely positive that the defendant burglarized his shed, and not some other black male on a bike around his neighborhood. Mortillaro testified that none of the police officers forced, coerced, or promised anything in order to make him identify the defendant.
Sergeant Charles Cassard with the Jefferson Parish Sheriffs Office testified that, on September 12, 2005, he was patrolling near Wright Avenue and Stumpf in Terrytown when he received a dispatch alerting him that there was "a black male on a bike" sought in connection with a possible burglary. Sergeant Cassard testified that he did not remember if the dispatch included a description of whether the man had facial hair, as well as, his age, height, and weight, his jewelry and clothing, including whether he wore a hat, and the color of the bicycle.
Sergeant Cassard testified that he subsequently observed a black male, whom he identified in court as the defendant, on a bike at the corner of Wright Avenue and Stumpf. The defendant came down Wright Avenue, which had downed power line poles across the street. The defendant was carrying a weed-eater. When Sergeant Cassard stopped the defendant and asked him where he got the items, Sergeant Cassard saw that the defendant had a knapsack. According to Sergeant Cassard, the bag carried by the defendant was later found to contain tools including a Ryobi drill, parts of a rachet set, a screwdriver, a flashlight, screws, and two pennies. When asked if the defendant had anything in his possession that was designed to break or enter into a dwelling, Sergeant Cassard responded that a screw driver could be used for that purpose, but that the defendant did not have a crowbar, hammer, or a lock pick kit.
The defendant got off the bicycle when Sergeant Cassard exited his vehicle. Sergeant Cassard had only detained the defendant 30 to 40 seconds before several other units arrived on the scene. After the defendant was taken into custody, Sergeant Cassard overheard the defendant tell one of the deputies on the scene that he had removed the items in his possession from his daughter's house in the Louisburg Apartments in order to keep them safe. According to Sergeant Cassard, the Louisburg Apartments are located a mile away from Wright Avenue and Stumpf where he stopped the defendant. Sergeant Cassard opined that it would definitely have taken some time to traverse that distance on a bicycle or on foot.
Sergeant Cassard testified that he tried to locate the owner of the other items in the defendant's possession that did not belong to Mortillaro. However, he was unable to due to the condition of the houses, including open backyards, caused by damage from Hurricane Katrina. According to Sergeant Cassard, no one, including the members of the defendant's family, claimed any of the other items that were in the defendant's possession on that day.
Deputy Michael Miles with the Jefferson Parish Sheriffs Office testified that on September 12, 2005, he was patrolling the *93 area around Wright Avenue and Stumpf with his partner because of looting in the neighborhoods. He was dispatched to 653 Wright Avenue in response to a simple burglary investigation. According to Deputy Miles, Anthony Mortillaro, the victim of the burglary, told him that he could identify the perpetrator. Deputy Miles testified that he subsequently learned that Mortillaro had positively identified the person who burglarized his shed at the intersection of Wright and Stumpf. Deputy Miles also identified a photograph of the defendant, whom he identified in court, being placed under arrest at the same location. Subsequently, Mortillaro gave a voluntary written statement that he signed.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant argues that the evidence related to his identification was insufficient to support his conviction beyond a reasonable doubt. The defendant claims that Mortillaro's description of the perpetrator who burgled his shed lacked detail and was ambiguous. The defendant asserts that, even though Mortillaro described the perpetrator as wearing a cap, the police radio call did not mention the perpetrator as wearing a cap. The defendant notes that Mortillaro could not describe the type of cap the perpetrator wore. In addition, the defendant notes that the police did not check any property for fingerprints.
The defendant also argues that Mortillaro's identification is questionable because the defendant was found moments after the burglary in possession of a knapsack full of heavy tools after Mortillaro saw the defendant leave without a weed-eater or knapsack in his possession. The defendant contends that there is also no corroboration of Mortillaro's identification. The defendant claims that Mortillaro's "street scene post-Katrina show-up" identification is inherently suggestive.
"Simple burglary is the unauthorized entering of any dwelling ... or other structure, movable or immovable ... with the intent to commit a felony or any theft therein...."[1] Therefore, in order to convict a defendant of simple burglary, the State must prove beyond a reasonable doubt that the defendant entered, without authorization, and had the specific intent to commit a felony or theft therein.[2]
In addition to proving the statutory elements of the charged offense, the State is required to prove the identity of the perpetrator.[3] The State is required to negate any reasonable probability of misidentification in order to carry its burden of proof when the key issue is identification. Id.
In the present case, the defendant only challenges his identification, not any of the other elements required to prove the offense of simple burglary.
A defendant challenging an identification procedure must prove that the identification was suggestive and there was a substantial likelihood of misidentification as a result of the identification process. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, 932, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000). It is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness. *94 State v. Hurd, 05-258 (La. App. 5 Cir. 11/29/05), 917 So.2d 567, 570.
Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); State v. Hurd, 917 So.2d at 570. Factors to consider in assessing the reliability of an identification include: (1) the witness' opportunity to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. Manson v. Brathwaite, 97 S.Ct. at 2253.
Generally, one-on-one identifications are not favored. However, such an identification procedure is permissible under certain circumstances. For example, one-on-one identifications are justified when the accused is apprehended within a relatively short period of time after the occurrence of the crime and has been returned to the scene for immediate identification. State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 69, writ denied, 98-264 (La.6/19/98), 719 So.2d 481. Such prompt confrontations between the defendant and the victim promote fairness by ensuring the reliability of the identification and the expeditious release of innocent suspects. State v. Clennon, 98-1370 (La.App. 5 Cir. 6/30/99), 738 So.2d 161, 164.
State v. Scott, 06-134 (La.App. 5 Cir. 7/25/06), 939 So.2d 462, 466.
We find that the victim's testimony fulfilled the criteria in Manson v. Brathwaite, supra. In the present case, as in Scott, the State proved the defendant was the perpetrator through the testimony of eyewitness Mortillaro. Mortillaro's testimony is clear that he got a good look at the perpetrator as he carried the items from Mortillaro's shed, dropped them, and walked away. Mortillaro was absolutely positive that the defendant burglarized his shed, not some other black man on a bicycle like the man Mortillaro saw at the time the defendant was being booked. Also, Mortillaro testified that the defendant's hairstyle, i.e., his appearance, "stuck out in [his] mind." According to Mortillaro, within 10 to 15 minutes, he identified the defendant as the man who burglarized his shed. Also, Mortillaro testified that no one coerced him into making the identification.
Defendant focuses on the fact that the description of the perpetrator the dispatcher gave to Sgt. Cassard was lacking in detail. Mortillaro, however, was "absolutely positive" in his identification of defendant as the man who entered his shed and attempted to take his property. Defendant also points out that when he was stopped by police, he had a knapsack with him, which the perpetrator did not have when he left Mortillaro's yard. This Court notes, however, that the victim testified that about 10-15 minutes passed between the time the perpetrator left and when police took him to identify Spurlock. It is not impossible that Spurlock could have retrieved those items in the time frame described, and so had them on his person when he was detained.
The State proved that the defendant was the perpetrator and negated the likelihood of misidentification by presenting evidence that Mortillaro got a good look at defendant at the time of the offense, and identified the defendant within a relatively short time in close proximity to the place where the offense was committed.

*95 ERROR PATENT DISCUSSION

The defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990) regardless of whether defendant makes such a request. A review of the record reveals no errors patent requiring corrective action.
The defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 14:62; State v. Petty, 99-1307, p. 3 (La.App. 5 Cir. 4/12/00), 759 So.2d 946, 949, writ denied, 00-1718 (La.3/16/01), 787 So.2d 301.
[2] See State v. Vortisch, 00-67, p. 5 (La.App. 5 Cir. 5/30/00), 763 So.2d 765, 768.
[3] State v. Searls, 04-790, p. 5 (La.App. 5 Cir. 1/25/05), 895 So.2d 40, 43.