939 So.2d 462 (2006)
STATE of Louisiana
v.
Ben H. SCOTT.
No. 06-KA-134.
Court of Appeal of Louisiana, Fifth Circuit.
July 25, 2006.
*464 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Juliet Clark, Kenneth Bordelon, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Margaret S. Sollars, Attorney at Law, Louisiana Appellate Project, Thibodaux, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
EDWARD A. DUFRESNE, JR., Chief Judge.
The Jefferson Parish District Attorney filed a bill of information on February 20, *465 2004, charging defendant, Ben Scott, with armed robbery in violation of LSA-R.S. 14:64.[1] He pled not guilty and filed several pretrial motions including motions to suppress evidence, confession, and identifications, all of which were denied after a hearing. The state subsequently amended the bill of information and changed the charge against defendant from armed robbery to first degree robbery in violation of LSA-R.S. 14:64.1. Defendant entered a plea of not guilty to this amended charge. The matter proceeded to trial before a twelve person jury on March 29 and 30, 2005. After considering the evidence presented, the jury found defendant guilty as charged. On August 12, 2005, the trial judge sentenced defendant to serve forty years in the Department of Corrections. Defendant now appeals.[2]

FACTS
At approximately 10:20 p.m. on January 30, 2004, Sandi Roe was working at the Shell gas station on Lapalco and Woodmere when a man entered the store and announced he was robbing the store. Ms. Roe saw the man's hand resting on what she believed to be the butt of a gun in his waistband. The man handed Ms. Roe a clear plastic bag and told her he wanted cigarettes, the brands of which he specified, and lighters. He also demanded money from the register, which Ms. Roe dumped into the bag. He then instructed Ms. Roe to give him the bag, and he exited the store.
After defendant left, Ms. Roe called 911 from the store phone. When there was no answer, she called 911 from her cell phone and went outside where she observed defendant getting into a small dark blue Toyota-like truck. While Ms. Roe was outside, a customer, Cary Singletary, arrived. Ms. Roe told Mr. Singletary that she had just been robbed and pointed out the truck in which the perpetrator was leaving. Mr. Singletary followed the truck until the truck became stuck in the mud. Mr. Singletary then obtained the truck's license plate number and returned to the Shell station, at which time the police were arriving on the scene.
As Mr. Singletary arrived at the Shell station, he again spotted the truck. The police pursued the truck until it crashed in the Woodmere subdivision. The perpetrator fled the truck and was apprehended following a brief foot pursuit. Ms. Roe was subsequently brought to the scene of the apprehension where she positively identified the suspect as the person who robbed her at the Shell station. Additionally, Mr. Singletary identified the suspect at the scene of the apprehension as the person driving the truck he followed as it was leaving the Shell station.
Defendant's truck was secured. An inventory of its contents revealed scattered cigarettes, lighters, and cartons of cigarettes and currency inside a clear garbage bag. Ms. Roe identified these items as things taken from the Shell station during the robbery. The items had a value of $1,497.98.
After his arrest, defendant gave a statement to police admitting his involvement in the robbery. At trial, defendant testified he went to the Shell station on the night of the incident to buy gas and a drink. He stated he parked his truck and was in the process of figuring out how much money he needed and how much he had when a *466 man armed with a gun approached his truck and carjacked him. Defendant stated the man told him where to drive and then jumped out of the truck when it got stuck in the mud. Defendant explained he ran from the police because of his felony record. He further testified he gave his inculpatory statement out of fear and intimidation.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assigned error, defendant challenges the trial court's denial of his motion to suppress identifications, claiming that the one-on-one identifications were unduly suggestive and further that there was a high likelihood of misidentification. Defendant also challenges the trial court's denial of his motion to suppress statement, asserting that it was not freely and voluntarily given. For the reasons which follow, we find no error in the trial court's denial of defendant's motions to suppress.
Motion to Suppress Identifications
A defendant challenging an identification procedure must prove that the identification was suggestive and there was a substantial likelihood of misidentification as a result of the identification process. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, 932, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000). It is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness. State v. Hurd, 05-258 (La.App. 5 Cir. 11/29/05), 917 So.2d 567, 570.
Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); State v. Hurd, 917 So.2d at 570. Factors to consider in assessing the reliability of an identification include: (1) the witness' opportunity to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. Manson v. Brathwaite, 97 S.Ct. at 2253.
Generally, one-on-one identifications are not favored. However, such an identification procedure is permissible under certain circumstances. For example, one-on-one identifications are justified when the accused is apprehended within a relatively short period of time after the occurrence of the crime and has been returned to the scene for immediate identification. State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 69, writ denied, 98-264 (La.6/19/98), 719 So.2d 481. Such prompt confrontations between the defendant and the victim promote fairness by ensuring the reliability of the identification and the expeditious release of innocent suspects. State v. Clennon, 98-1370 (La.App. 5 Cir. 6/30/99), 738 So.2d 161, 164.
In the present case, the victim testified she was brought to the scene where defendant was apprehended and asked whether she could identify the suspect as the perpetrator. The victim remained in the back seat of the police car while the deputy rolled down her window. She stated she observed defendant standing at a distance, accompanied by a police officer, with his hands behind his back and headlights shining on him.[3] The victim made a *467 positive identification of defendant as the perpetrator within thirty minutes of the robbery.
The customer, Cary Singletary, testified he was asked if he could identify the person he saw driving the truck as it left the Shell station. He went to the scene where defendant was apprehended and saw defendant handcuffed and lying on the ground among several police officers. Mr. Singletary positively identified defendant as the person driving the truck within five to eight minutes after following the truck.
Defendant contends that these two one-on-one identifications were unduly suggestive. He additionally argues that there was a substantial likelihood of misidentification because the victim could not describe the physical characteristics of the perpetrator and seemed confused at the time of the out-of-court identification by the difference in clothing worn by him and the perpetrator.
We first note that similar one-on-one identifications have been held not to be suggestive. In State v. Winfrey, 703 So.2d at 70, this court determined that the identification of a defendant while handcuffed and seated in the back of a police car was not suggestive. See also State v. Hurd, 917 So.2d at 571, where this court upheld the identification of the defendant by the victims despite the one-on-one identification procedure where defendant was standing in the street among several police officers.
Moreover, applying the Manson v. Brathwaite factors, we find that even if the identifications are considered suggestive, defendant has failed to show there was a likelihood of misidentification. The victim was able to get a good look at the perpetrator during the crime. She stated the robbery lasted about eight to ten minutes during which time she was face to face with the perpetrator. Although she partially turned away from the perpetrator to retrieve the cigarettes he demanded, the victim testified she was afraid to take her eyes off of him.
Mr. Singletary testified that he was only ten to fifteen feet away from the driver of the truck when he obtained the license plate number. Mr. Singletary explained his high beam lights were shining on the driver and he was able to view the driver for approximately one and one-half minutes.
The victim's description of the clothing worn by the perpetrator matched that of defendant's. The victim described the perpetrator as wearing a dark hat, sunglasses, a blue bandanna, dark jeans, and a shirt with a shirt underneath it.[4] The victim stated defendant was dressed the same at the time of the identification except he was not wearing the hat or the sunglasses.
At the hearing on the motion to suppress, the victim was shown a photograph of black jeans, a black shirt, black shoes, and a bandanna which she identified as the clothing worn by the perpetrator. These *468 items were collected from defendant at the time of his arrest, with the exception of the bandanna which was recovered from the back seat of a police car where defendant had been sitting. Additionally, the victim described the "get away" vehicle as a dark blue older model truck. When defendant was apprehended, he was driving an older model blue truck.
Mr. Singletary recalled the driver of the truck he followed was wearing a black outfit including sunglasses and a hat. He testified that at the time of the identification, defendant was dressed the same way as the driver of the truck with the exception of the sunglasses and bandanna.
Furthermore, both identifications were made shortly after the robbery. The victim made the identification within thirty minutes of the robbery, and Mr. Singletary made his identification within five to eight minutes of following the truck. The victim was positive in her identification of defendant as the perpetrator. She testified she had no doubt and was one hundred percent certain that defendant was the perpetrator.
Based on the foregoing discussion, we find that the identifications were not suggestive nor was there a substantial likelihood of misidentification. Therefore, the trial court did not err in denying defendant's motion to suppress the identifications.
Motion to Suppress Statement
On appeal, defendant asserts that his statement was involuntary because it was coerced by threats and promises. Defendant specifically alleges that he was intimidated by his prior beating by the police, which occurred at the time of his arrest, and threatened with additional physical abuse. He also asserts he was induced to make the statement due to promises by the detective that he could get defendant three years. Further, defendant contends he was on pain medication at the time of the statement.
At the hearing on the motion to suppress defendant's confession, Detective John Carroll testified that he went to see defendant at the Jefferson Parish Correctional Center for the purpose of interviewing him. He stated he took defendant to the detective bureau where he advised defendant of his rights. According to Detective Carroll, defendant indicated he understood his rights, initialed each right on the rights of arrestee form, and agreed to waive his rights and give a statement.
Detective Carroll testified he was aware defendant had been at Charity Hospital earlier that day but was unaware defendant was on pain medication. Detective Carroll stated defendant advised him that he had six fractured ribs and was in pain but stated defendant was able to talk and that he agreed to go with Detective Carroll to the detective bureau to give a statement. Detective Carroll testified he did not force or coerce defendant to give a statement. He specifically denied that he told defendant he would talk to the District Attorney about giving defendant three years if defendant would confess.
The trial court concluded that defendant's confession was freely and voluntarily given and denied his motion to suppress confession. The trial judge noted that defendant's answers in his statement were clear and demonstrated he understood what he was saying.
At trial, defendant testified he was beaten by the police during his apprehension. He stated he suffered black eyes, a laceration to his left eye that required eight stitches, and broken ribs. He explained he was treated at Charity and given pain medication that made him drowsy. Defendant testified that when Detective Carroll arrived at lockup, he was sleeping due to *469 the pain medication. He stated he explained to Detective Carroll that he was in pain due to his broken ribs but that Detective Carroll threatened him with another beating. Defendant testified the interrogation was conducted in a forceful manner and that he was not allowed to leave despite his attempt to get up out of the chair. He further stated Detective Carroll said he would help defendant get three years.
At trial, Detective Carroll reiterated his earlier testimony from the suppression hearing that defendant was coherent, cooperative, and agreed to talk. He stated he did not force or threaten defendant to make a statement and that he did not promise defendant anything in return for making the statement. Detective Carroll further stated defendant did not appear to be under the influence of any medication at the time of his statement. He also testified defendant never attempted to leave during the statement.
Before an inculpatory statement, made during a custodial interrogation, may be introduced into evidence, the state must prove beyond a reasonable doubt that the defendant was first advised of his Miranda[5] rights and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451. A determination of voluntariness is made on a case-by-case basis, depending on the facts and circumstances of each situation. The admissibility of a confession or statement is a determination for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence. State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 780, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866.
Regarding defendant's claim he was threatened with physical abuse, the interrogating officer testified at the suppression hearing and at trial that defendant waived his rights and agreed to give a statement. He also testified he did not coerce or threaten defendant or promise him anything in order to get the statements. No evidence was presented at the suppression hearing that suggested defendant's statement was given under threats of physical abuse or promises of leniency. The only evidence of such allegations was defendant's trial testimony. In the present case, the trial court made a credibility determination and obviously chose to believe the testimony of the interrogating officer. We find that the record supports the trial court's credibility determination.
See State v. McLelland, 03-498 (La.App. 5 Cir. 10/15/03), 860 So.2d 31, writ denied, 03-3372 (La.3/26/04), 871 So.2d 347, where this court found no error in the trial court's denial of the defendant's motion to suppress his statement based on his claim he was induced to give a statement. This court noted the interrogating officer was the only person to testify at the suppression hearing. Although the defendant testified at trial that he was induced by promises to give his statement, this court found the trial court made a credibility determination that was supported by the record. See also State v. Williams, 05-317 (La. App. 5 Cir. 11/29/05), 918 So.2d 466, 475.
Regarding defendant's claim that his statement was involuntary because he was taking pain medication, the influence of the medication, or the intoxication, must have been of such a degree so as to negate his comprehension and to make him unconscious *470 of the consequences of what he said. Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact and a trial judge's conclusions on this issue will not be disturbed unless unsupported by the evidence. State v. Quest, 772 So.2d at 780.
In the present case, defendant never claimed his medication impaired his ability to understand his rights. Additionally, at no time did defendant claim he did not understand his rights. Defendant's statement shows he was coherent and appropriately answered the questions asked. Nothing in the record suggests defendant's medication resulted in incapacitating intoxication that would vitiate the voluntariness of his confession. See State v. Quest, 772 So.2d at 781, where this court found no error in the trial court's denial of defendant's motion to suppress his statement despite his claim that he was under the influence of heroin, and State v. Hotard, 03-435 (La.App. 5 Cir. 12/30/03), 864 So.2d 748, 756, where this court found defendant's confession to be voluntary despite defendant's claim that he had taken a double dose of Xanax.
Based on the foregoing discussion, we find that defendant's statement was freely and voluntarily given, and therefore, the trial court did not abuse its discretion in denying defendant's motion to suppress statement.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assigned error, defendant challenges the sufficiency of the evidence used to convict him of first degree robbery. He specifically claims the state failed to prove he was the perpetrator of the offense.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In addition to proving the statutory elements of the charged offense, the state is required to prove the identity of the perpetrator. State v. Vasquez, 98-898 (La.App. 5 Cir. 2/10/99), 729 So.2d 65, 69. Where the key issue is identification, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof.
To prove identification in this case, the state offered the testimony of the victim who described the perpetrator to the 911 operator as a black male approximately five feet five inches tall between the ages of 45-50. She stated he was wearing dark sunglasses, a hat, a blue bandanna, an old blue checkered shirt, and blue jeans, and was carrying a clear white plastic bag. The victim also told the 911 operator the perpetrator was driving a dark blue, kind of beat up, older pickup, small Toyota truck.[6] Defendant was apprehended within minutes of the robbery after fleeing a dark blue older GMC pickup truck. He was wearing a black shirt and black jeans. Approximately thirty minutes after the robbery, the victim positively identified defendant as the perpetrator.
The state also offered the testimony of the customer, Cary Singletary, who followed the pickup truck as it was fleeing the Shell station. Mr. Singletary testified the victim pointed out the vehicle the perpetrator got into after robbing the store. He stated it was a blue GMC/Chevy truck. Mr. Singletary followed the truck and obtained the license plate number. *471 He testified the driver of the truck exited the truck when it became stuck in the mud and asked him for help. Mr. Singletary stated he was able to view the driver for approximately one and one-half minutes. He described the driver as wearing dark clothing consisting of jeans and a t-shirt, sunglasses, and a bandanna around his neck. Approximately five to eight minutes later, Mr. Singletary positively identified defendant as the driver of the truck he followed.
The license plate of the truck defendant was driving matched that given by Mr. Singletary. Additionally, the truck was registered to defendant's deceased father. Defendant testified he obtained the truck through his father's succession. The truck contained numerous cigarette cartons, loose cigarette packs, cigarette lighters, and money, which were items the victim reported were taken during the robbery. The truck also contained a clear white plastic bag with cartons of cigarettes and lighters. The victim reported to the 911 operator that the perpetrator had a clear white plastic bag. She testified she placed cigarette cartons, lighters, and money into the plastic bag.
Additionally, the state offered the surveillance video of the robbery, which captured the crime in progress, as well as still photographs taken from the video.
Defendant argues this evidence does not prove he was the perpetrator of the crime. He asserts photographs of the robber taken from the surveillance tape at the Shell station were dissimilar to the way he appeared when he was apprehended. He also maintains there were discrepancies in the way he was dressed and the victim's description of the clothing worn by the perpetrator. Defendant further alleges there were no fingerprints linking him to the scene of the crime and that the evidence supports his defense that he was carjacked.
The jury heard all of the evidence, including any inconsistencies in the description of the perpetrator. They heard the victim's testimony both on direct and cross-examination. They also saw the video and still photographs of the perpetrator. They further heard defendant's testimony about how he was carjacked and forced by the perpetrator to drive away from the Shell station. The jury obviously found the victim credible and chose to believe the victim's testimony identifying defendant as the perpetrator of the first degree robbery.
It is the jury's function to determine the weight of the evidence bearing on the defendant's identification. When faced with a conflict in testimony, the trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for the requisite factual findings. State v. Turner, 03-325 (La.App. 5 Cir. 6/19/03), 850 So.2d 811, 816, writ denied, 03-2170 (La.1/30/04), 865 So.2d 74. It is not the appellate court's function to reevaluate the credibility choices made by the jury. State v. Spencer, 93-571 (La.App. 5 Cir. 1/25/94), 631 So.2d 1363, 1370, writ denied, 94-488 (La.2/3/95), 649 So.2d 400.
Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have concluded, beyond a reasonable doubt, that defendant was the perpetrator of the crime. Accordingly, the arguments raised by defendant in this assigned error are likewise without merit.

ASSIGNMENT OF ERROR NUMBER THREE
In his final assigned error, defendant requests an error patent review of *472 the record in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). As defendant has noted in his appellate brief and as the state has conceded, the trial court failed to rule on his motion for reconsideration of sentence. This court has held that the failure of a trial court to rule on a timely motion for reconsideration of sentence requires a remand. State v. Evans, 02-1108 (La.App. 5 Cir. 3/11/03), 844 So.2d 111, 114. Therefore, we remand this matter to the trial court for a ruling on the motion and supplementation of the record with the results. If the motion to reconsider is granted and defendant is resentenced, he may appeal the new sentence. If the motion is denied or if it has already been ruled on, defendant must move to relodge this appeal within sixty days of the date of the ruling on the motion to reconsider sentence or the date of this opinion, whichever is later. State v. Winfrey, 703 So.2d at 81.
Accordingly, defendant's conviction is hereby affirmed, and the case is remanded with instructions.
CONVICTION AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The bill of information also charged defendant with aggravated flight in violation of LSA-R.S. 14:108.1(C), but that charge is not a part of this appeal.
[2] It is noted that the state filed a multiple offender bill of information alleging defendant to be a fourth felony offender. Those proceedings are still pending in the district court.
[3] In determining whether the ruling on a defendant's motion to suppress was correct, the reviewing court is not limited to the evidence adduced at the hearing on the motion to suppress but may also consider pertinent evidence given at the trial. State v. Thomas, 04-1341 (La.App.5/31/05), 904 So.2d 896, 902, writ denied, 05-2002 (La.2/17/06), 924 So.2d 1013.
[4] The victim described the perpetrator's shirt to the 911 operator as a blue checkered shirt. At the time of his apprehension, defendant was wearing a black shirt. Contrary to defendant's claim, this description is not inconsistent. The victim stated the perpetrator was wearing a shirt with a shirt under it. She stated the outer shirt was partially opened at the time of the robbery indicating she could see the second shirt. A rational trier of fact could conclude the perpetrator shed his outer shirt prior to being apprehended.
[5] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[6] The victim testified that she was not good at determining the make and models of vehicles.