STATE OF LOUISIANA

VERSUS

QUINCEY STEWART

NO. 24-KA-50

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 22-2058, DIVISION "I"
HONORABLE NANCY A. MILLER, JUDGE PRESIDING

October 30, 2024

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Marc E. Johnson, and Scott U. Schlegel

**AFFIRMED;**
**REMANDED WITH INSTRUCTIONS**
    **MEJ**
    **JGG**
    **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
 Honorable Paul D. Connick, Jr.
 Thomas J. Butler
 Darren A. Allemand
 Eric Cusimano

COUNSEL FOR DEFENDANT/APPELLANT,
QUINCEY STEWART
 Kevin V. Boshea

**JOHNSON, J.**

Defendant, Quincey Stewart, appeals the 24th Judicial District Court's judgment finding him guilty of two violations of 14:95.1, convicted felon in possession of a firearm, and sentencing him to 20 years at hard labor on each count without the benefit of probation, parole, and/or suspension of sentence. For the following reasons, we affirm the district court's convictions and sentences and remand the matter with instructions.

*FACTS AND PROCEDURAL HISTORY*

On April 21, 2023, the Jefferson Parish District Attorney filed a bill of information charging Defendant, Quincey Stewart a/k/a/ Quincy Stewart, with possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1 (count one). Defendant was arraigned and pled not guilty. On October 12, 2023, the State filed an amended bill of information charging Defendant with two counts of possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1 (counts one and two). Defendant was arraigned on the amended bill and pled not guilty on October 16, 2023.

The following facts were adduced at trial on October 17 and 18, 2023 before a twelve-person jury.

Officer Shannon Guidry of the Gretna Police Department testified that on April 8, 2022, she was dispatched to 721 Anson in response to property that was found. She stated that she was wearing a body camera, which recorded her investigation. Mr. Ronald Orgeron told Officer Guidry he found firearms and ammunition on the side of the house inside a wall. She also recalled speaking with Defendant who provided her with identifying information and told her he had been living at the residence for two years and that the firearms did not belong to him.

Officer Guidry testified that she requested a Firearms Trace Report, which identified Deionta Wayne James as the purchaser of one of the firearms, a Ruger, from Academy Sports and Outdoors located at 91 Westbank Expressway (approximately one mile away from 721 Anson) on March 25, 2022.

Ronald Orgeron testified that 721 Anson Street in Gretna is one of the rental properties he and his wife own. Margaret Stewart, the mother of Defendant, was the tenant at that property. On the morning of April 8, 2022, Mr. Bergeron and some of his workers went to 721 Anson to repair the siding. When he removed some of the siding on the left rear side of the house, he found two firearms and ammunition. Mr. Orgeron collected the guns, set them on the tailgate of his truck, called 9-1-1, and later gave them to a police officer. On cross-examination, Mr. Orgeron testified that his wife may have notified Ms. Stewart that he would be working on the property that morning and his crew had been working for around twenty minutes, "hammering and banging and crowbarring" without interruption, before finding the guns.

Sergeant Keri Lynch of the Gretna Police Department was also dispatched to 721 Anson on April 8, 2022, due to a complaint that firearms were found. She also wore a body camera, which recorded her investigation. Mr. Orgeron showed the sergeant where he had found the guns—a Ruger and a Glock – on the side of the house. Sergeant Lynch did not call for crime scene technicians to come to the scene because the guns had already been moved, and she was trained to handle the found property.

Sergeant Lynch further testified that, after she put on gloves, she rendered the Glock firearm safe. There were no bullets in the chamber of the Glock, but one was in the magazine. While on the scene, a subject, later identified as co-defendant, Andrew Johnson, arrived unannounced to retrieve his Glock firearm and provided Sergeant Lynch with a receipt, dated March 12, 2022. The serial

number listed on the receipt matched the serial number engraved on the Glock. She contacted the pawnshop where the firearm had been purchased and confirmed Johnson had purchased the weapon. She also viewed surveillance video from the pawnshop confirming that Johnson purchased the firearm.

Brad Dufrene, the owner of the pawnshop, testified about the process of verifying potential buyers are familiar with guns and know how to handle them safely before a sale. He also explained that the store was required to complete a "4473" – a federal form submitted to the FBI and ATF to prohibit the purchase of firearms by persons who committed certain crimes. Mr. Dufrene advised that, in some instances, the store must wait five days before releasing the firearm to the customer. He authenticated the photographs he provided to the investigators – stills from his store's surveillance videos –that appear to depict Johnson and Defendant on March 12, 2023 and on a previous day, at the counter of the pawn shop.

Sergeant Lynch also rendered the other firearm safe as well. There was a live round chambered in the Ruger, which she removed and attempted to place into the magazine, but the magazine in the Ruger was full. Sergeant Lynch stated that she provided the serial numbers of the firearms to her dispatcher, who ran them through a criminal database.

Sergeant Lynch then placed the firearms into two separate evidence bags and secured them in her patrol vehicle. Crime scene technician, Kevin Fernandez, swabbed the firearms three days later and sent those swabs to the crime lab. Buccal swabs were also taken from Johnson and Defendant at the scene. Sergeant Lynch also noted that a box of live ammunition found was of a different caliber from the two firearms.

Sergeant Lynch then entered the information Officer Guidry obtained from Defendant into a database, and learned that he had previously been convicted of crimes and was not allowed to be in possession of a firearm. She identified the

certified conviction packet of Defendant's March 7, 2013 federal conviction, which shows that defendant was convicted of conspiracy to distribute and possession with intent to distribute 280 grams or more of cocaine base (crack) and 500 grams or more of cocaine hydrochloride. She also identified the certified conviction packet of Defendant's July 18, 2013 state conviction, which shows that Defendant was convicted of possession of heroin.

The trial court accepted April Solomon as an expert in the field of DNA analysis. She testified that she was employed by the Jefferson Parish Sheriff's Office regional DNA lab as a forensic DNA analyst. Ms. Solomon compared buccal swabs from Defendant and his co-defendant, Johnson, to swabs obtained from the Glock and the Ruger firearms recovered in the instant case.

Based on her testing, Ms. Solomon asserted that the partial DNA profile obtained from the swab of the Ruger pistol was interpreted as being a mixture of DNA from four contributors. Defendant was established as a probable contributor to the DNA found on the Ruger – Ms. Solomon's report concluded it was "at least 100 billion times more likely if the DNA originated from [Defendant] and three unknown contributors than if it originated from four unknown contributors."

Ms. Solomon determined that Defendant was also one of two probable contributors to the DNA sample obtained from the Glock. Analysis of DNA found on the Glock showed that it was "at least 100 billion times more likely if the DNA originated from [Defendant] and one unknown contributor than if it originated from two unknown contributors." On cross, Ms. Solomon confirmed, that *via* secondary mode of transfer, it is "a possibility" one's DNA could be found on an object that person never touched.

Co-defendant Johnson was excluded as a contributor to the DNA mixtures found on both the Ruger and the Glock.

At the end of the trial, after approximately one and a half hours of deliberations, a unanimous twelve-person jury found Defendant guilty as charged on both counts. On October 24, 2023, Defendant filed a motion for new trial and a motion for post-verdict judgment of acquittal. On that same date, Defendant filed a motion to enroll as attorney of record, a motion to reconsider sentence (prior to sentencing), and a motion for appeal. On October 25, 2023, the trial court denied the motion for new trial and the motion for post-verdict judgment of acquittal. On that same date, after waiving sentencing delays, the trial court allowed counsel to read a letter from the community in support of Defendant into the record. The court, after considering the sentencing guidelines under La. C.Cr.P. art. 894.1, sentenced Defendant to two sentences of twenty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, to run concurrently. The same day, the trial court granted Defendant's motion for appeal and denied his motion to reconsider sentence.

## ASSIGNMENTS OF ERROR

Defendant assigns the following as error:

1. **The verdicts herein are contrary to the law and the evidence.**

2. **The district court erred in the denial of the motion for new trial.**

3. **The district court erred in the denial of the motion for judgment notwithstanding the verdict.**

4. **The imposed maximum sentences of twenty (20) years hard labor without probation, parole and/or suspension of sentence are unduly harsh and constitutionally excessive.**

5. **The district court erred in the denial of the motion to reconsider sentence.**

## LAW AND DISCUSSION

**ASSIGNMENT OF ERROR NUMBER ONE**
The verdicts herein are contrary to the law and the evidence.

**ASSIGNMENT OF ERROR NUMBER TWO**
The district court erred in the denial of the motion for new trial.

**ASSIGNMENT OF ERROR NUMBER THREE**
The district court erred in the denial of the motion for judgment notwithstanding the verdict.

The first three assignments of error are addressed together because they are related.

Defendant argues that the evidence was insufficient to support his convictions of two counts of possession of a firearm by a convicted felon. He contends that no evidence was offered by the State that, on the dates in question, he knew of the specific location of either firearm. He also contends that the State failed to prove beyond a reasonable doubt that he had actual or constructive possession of the firearms, an essential element of the offenses. Defendant also maintains that since there was no evidence that he ever carried any firearm on his person, the State had the burden of proving his intent to possess the firearms. He argues that there was no evidence as to how long these firearms were in the "yard." Defendant points out that no fingerprint evidence was found. He further argues that there was no evidence that he placed those weapons behind the siding of the residence. As such, Defendant contends that the State failed to prove all of the required elements of the offenses. He also contends that for these reasons, the trial court erred by denying his motion for new trial and motion for post-verdict judgment of acquittal.

The State responds that it presented sufficient evidence to support Defendant's two convictions of possession of a firearm by a convicted felon. It further responds that the firearms were found in the wall of a residence at which Defendant had lived for two years. The State asserts that considering both firearms had been purchased less than a month prior to their discovery, they could not have been there for long. It also asserts that Defendant's DNA was found on both firearms to a probability of at least one hundred billion. The State contends that

Defendant was seen on camera with Johnson at a pawnshop on the day that Johnson purchased the Glock. It concludes that this compelling circumstantial evidence clearly established that Defendant possessed these firearms.

The trial court denied Defendant's motion for new trial pursuant to La. C.Cr.P. art. 851, arguing that the verdict was contrary to the law and the evidence and his motion for post-verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821, arguing that the evidence was insufficient to support the convictions.

The motion for a new trial is based on the supposition that injustice has been done to the defendant, and unless such is shown to have been the case, the motion shall be denied, no matter upon what allegations it is grounded. La. C.Cr.P. art. 851(A). On motion of the defendant, the court shall grant a new trial whenever the verdict is contrary to the law and the evidence. La. C.Cr.P. art. 851(B)(1). The denial of a defendant's motion for new trial, based on La. C.Cr.P. art. 851(B)(1), presents nothing for review on appeal. *State v. Condley*, 04-1349 (La. App. 5 Cir. 5/31/05), 904 So.2d 881, 888, *writ denied*, 05-1760 (La. 2/10/06), 924 So.2d 163. However, both the Louisiana Supreme Court and this Court have addressed the constitutional issue of the sufficiency of the evidence under such circumstances. *Id.*

The question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821. *State v. Williams*, 20-46 (La. App. 5 Cir. 12/30/20), 308 So.3d 791, 816, *writ denied*, 21-316 (La. 5/25/21), 316 So.3d 2. La. C.Cr.P. art. 821(B) provides, "A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty."

The constitutional standard for testing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the State proved all the essential

elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Ortiz*, 96-1609 (La. 10/21/97), 701 So.2d 922, 930, *cert. denied*, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); *State v. Scott*, 06-134 (La. App. 5 Cir. 7/25/06), 939 So.2d 462, 470, *writ denied*, 06-2133 (La. 3/30/07), 953 So.2d 61. Under the *Jackson* standard, a review of a criminal conviction record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. *State v. Flores*, 10-651 (La. App. 5 Cir. 5/24/11), 66 So.3d 1118, 1122. Rather, the reviewing court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id. See also Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *Ortiz, supra*.

Evidence may be either direct or circumstantial. *Flores, supra*. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. *Id.*; *State v. Williams*, 05-59 (La. App. 5 Cir. 5/31/05), 904 So.2d 830, 833. When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *State v. Wooten*, 99-181 (La. App. 5 Cir. 6/1/99), 738 So.2d 672, 675, *writ denied*, 99-2057 (La. 1/14/00), 753 So.2d 208. This is not a separate test from the *Jackson* standard but rather provides a helpful basis for determining the existence of reasonable doubt. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. *Id.*

Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. *State v. Ray*, 12-684 (La.

App. 5 Cir. 4/10/13), 115 So.3d 17, 20, *writ denied sub nom. State ex rel. Ray v. State*, 13-1115 (La. 10/25/13), 124 So.3d 1096. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification to carry its burden of proof. *Id.*

To support a conviction under La. R.S. 14:95.1, the State must prove beyond a reasonable doubt that defendant had: (1) possession of a firearm; (2) a prior conviction for an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) the general intent to commit the offense. *State v. Woods*, 23-41 (La. App. 5 Cir. 11/15/23), 376 So.3d 1144, 1156, *writ denied*, 23-1615 (La. 5/29/24), 385 So.3d 700. With respect to the third element, the State must prove that ten years has not elapsed since the date of completion of the punishment for the prior felony conviction. *Id.* "La. R.S. 14:95.1 requires only general criminal intent, which means that the circumstances indicate that the accused 'in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.'" *State v. Abram*, 32,627 (La. App. 2 Cir. 10/27/99), 743 So.2d 895, 899, *writ denied*, 00-121 (La. 9/29/00), 769 So.2d 549. "General intent is shown when the proof shows that the perpetrator carried a firearm on his person." *Id.*, *citing State v. Woods,* 94-2650 (La. App. 4 Cir. 4/20/95), 654 So.2d 809, *writ denied,* 95-1252 (La. 6/30/95), 657 So.2d 1035. However, the prosecution must show that the defendant's intent amounted to an intent to possess rather than a mere acquiescence to the fact that there was a firearm in his presence when the perpetrator has not carried the firearm on his person. *Id.*

Here, Defendant argues that the State failed to prove beyond a reasonable doubt that he had either actual or constructive possession of the firearms, an essential element of the offense.

Actual possession of a firearm is not necessary to prove the possession element of La. R.S. 14:95.1. *See State v. Day*, 410 So.2d 741, 743 (La. 1982). Constructive possession is sufficient to satisfy the element of possession. *Id.*; *State v. Jones*, 09-688 (La. App. 5 Cir. 2/9/10), 33 So.3d 306, 314. A person is in constructive possession of a firearm if the firearm is subject to his dominion and control. *State v. Johnson*, 03-1228 (La. 4/14/04), 870 So.2d 995, 998; *State v. Mickel*, 09-953 (La. App. 5 Cir. 5/11/10), 41 So.3d 532, 535, *writ denied*, 10-1357 (La. 1/7/11), 52 So.3d 885. A person's dominion over a weapon constitutes constructive possession even if it is only temporary in nature and even if control is shared. *Johnson*, 870 So.2d at 999; *State v. Harrell*, 18-63 (La. App. 5 Cir. 10/17/18), 258 So.3d 1007, 1012.

A defendant's mere presence in an area where a firearm was found does not necessarily establish possession. *State v. Perry*, 17-567 (La. App. 5 Cir. 6/27/18), 250 So.3d 1180, 1197, *writ denied*, 18-1325 (La. 11/14/18), 256 So.3d 285. The State must also prove that the offender was aware that a firearm was in his presence and that the offender had the intent to possess the weapon. *Id.* Guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence. *Id*. The question of whether there is sufficient "possession" to convict is dependent on the facts of each case. *Mickel*, *supra*.

In *State v. Jones*, 15-956 (La. App. 4 Cir. 3/22/17), 214 So.3d 124, *writ granted*, 17-658 (La. 3/25/19), 319 So.3d 297, *reversed and remanded on other grounds*, 17-658 (La. 10/22/19), 285 So.3d 1074, the defendant was convicted of possession of a firearm by a convicted felon, among other things. The evidence revealed that the police conducted an aerial and ground surveillance operation in an attempt to locate Jones. A person matching his description was seen riding in a white Dodge pickup with one other person. The two subjects then ran from the vehicle carrying what appeared to be an assault rifle. Forensic testing of the AK-47

recovered from the area revealed Jones as the major contributor of DNA on the firearm, with a one in 10.5 quintillion probability that the DNA came from a person other than the defendant.

On appeal, Jones pointed out that no one positively identified him as being present or carrying an assault rifle on the day in question. He stated that his associate testified that he (his associate) was in possession of the firearm that day and that it belonged to his deceased friend, not Jones. The defendant's associate further testified that Jones was not present with him that day. The appellate court acknowledged that Jones was not definitively identified as having actually possessed the recovered AK-47 on the day in question; however, it found that the fact that his DNA was found on the firearm as the major contributor and that the same firearm was linked to the shooting where he was identified as the perpetrator was sufficient to satisfy the essential element of possession. *Jones*, 214 So.3d at 135.

In the instant case, the jury found that the circumstantial evidence showed that Defendant had actual and constructive possession of the firearms. At trial, Mr. Orgeron testified that on April 8, 2022, he found two firearms, a Glock and a Ruger, and ammunition while removing siding of a home rented by Defendant's mother. Defendant informed Officer Guidry that he had lived at that residence for two years. Co-defendant, Johnson, arrived at the scene to retrieve his Glock firearm. A receipt for the Glock showed that it was purchased from Pawn Depot on March 12, 2022.

No witness at trial identified Defendant in the photographs taken from Pawn Depot's video surveillance on the date the Glock was purchased and on the date the store released the firearm to the purchaser. However, the jurors had an opportunity to view Defendant at trial and determine for themselves whether Defendant was one of the men in the photographs.

A Firearms Trace Report showed that Diontae James purchased the Ruger on March 25, 2022 from Academy Sports and Outdoors, a store located nearby. Ms. Solomon, the DNA expert, testified that there was very strong support that Defendant was the contributor to the DNA found on both firearms. *Compare Jones*, *supra* (where the appellate court found that the presence of the defendant's DNA on an abandoned firearm supported a finding of possession).

In light of the foregoing, we find that the evidence was sufficient under the *Jackson* standard for a rational trier of fact to find Defendant guilty of two charges of possession of a firearm by a convicted felon. Further, the jury did not commit manifest error when it found that the circumstantial evidence proved that Defendant had possession of the firearms. The receipts showed that the firearms containing Defendant's DNA were purchased less than a month before they were found behind the siding of a house where Defendant admitted he had lived for two years. Accordingly, we also find that the trial court did not err by denying Defendant's motions for new trial and post-verdict judgment of acquittal. These assignments of error are without merit.

### ASSIGNMENT OF ERROR NUMBER FOUR
The imposed maximum sentences of twenty (20) years hard labor without probation, parole and/or suspension of sentence are unduly harsh and constitutionally excessive.

### ASSIGNMENT OF ERROR NUMBER FIVE
The district court erred in the denial of the motion to reconsider sentence.

Defendant argues that his maximum sentence of twenty years at hard labor without benefit of parole, probation, or suspension of sentence on each count are unduly harsh and constitutionally excessive. He further argues that his criminal history does not place him in the worst possible category of offender as it does not include convictions for any crimes of violence.

Defendant also argues that the facts adduced at trial do not justify the substantial sentences that he received. He asserts that there was no evidence

presented that Defendant was ever in actual physical possession of any firearm. The firearms were allegedly found in the exterior of the property not owned by Defendant. He avers that Mr. Orgeron, the property owner, was totally unfamiliar with Defendant. Therefore, he contends that the evidence viewed in the light most favorable to the State did not establish that Defendant owned or leased the Anson property. He also points out that the weapons were not found within the Anson property itself. For these reasons, he argues that the sentences imposed were excessive and that the trial court erred by denying his motion to reconsider the sentences.

The State defers to this Court as to whether Defendant's two concurrent twenty-year sentences are constitutionally excessive. However, the State asks the Court to take into consideration Defendant's criminal history, particularly his serious federal drug conviction involving a large quantity of drugs. The State further asks this Court to take into consideration that, although Defendant's sentences are without benefits, because the State did not file a multiple bill, Defendant will be eligible for a generous amount of "good time."

On October 24, 2023, prior to sentencing, defense counsel filed a motion to reconsider sentence under La. C.Cr.P. art. 881.1, arguing that the sentences were harsh and excessive. The trial court denied all of Defendant's post-trial motions the following day. Defense counsel then waived sentencing delays, and read into the record a letter from Daniel Reggiona, Defendant's lodge member and sponsor. Mr. Reggiona stated that Defendant was an extraordinary individual defined by his unwavering commitment to self-improvement, family, and community, despite his life's challenges; Defendant had diligently built a successful business showcasing entrepreneurial acumen that was both inspiring and commendable; through his business, Defendant had offered opportunities to young men and women guiding them toward growth and success; and Defendant had mentored troubled teens,

among other things. After reading the letter, the defense asked the court to take into consideration that none of Defendant's previous convictions were crimes of violence, and that none of them involved "gun play."

The prosecutor responded that Defendant had a criminal history, which included a 2006 conviction for possession of a Schedule II controlled dangerous substance; a 2010 conviction for possession of marijuana, second offense; a conviction for possession with intent to distribute heroin, one of the predicates used in the bill of information; and a federal conviction of possession with intent to distribute cocaine, another predicate used in the bill of information.

Following the arguments of counsel, the trial judge stated that she had considered the sentencing guidelines, including all of the mitigating and aggravating factors of La. C.Cr.P. art. 894.1. She also stated that Defendant's prior crimes all involved controlled dangerous substances. The trial judge pointed out that at least two of Defendant's previous convictions were for drug distributions and that one of them involved a significant quantity of drugs, namely, the federal conviction of distribution of 280 grams or more of crack cocaine and 500 grams or more of cocaine hydrochloride. The trial judge asserted that based on Defendant's record, she had previously offered him twenty years at hard labor without benefit of parole, probation, or suspension of sentence on each count, and that those were the sentences she was imposing that day, to run concurrently.

Defense counsel orally objected to the excessiveness of the sentences and indicated that he would follow up with a written motion to reconsider the sentences and argued Defendant's sentences were overly harsh under the circumstances and should be reduced under La. C.Cr.P. art. 881.1.

The prosecutor responded that Defendant was charged with possession of two firearms located outside Defendant's home and that those firearms contained Defendant's DNA. He argued that a reduction in the sentences was not appropriate

and would not reflect the seriousness of the crimes committed. The trial judge subsequently denied the motion to reconsider the sentences, stating, "The Court, having considered the Louisiana Code of Criminal Procedure Article 894.1, considering all aggravating and mitigating factors, the Court has determined that that was an appropriate sentence based upon his prior criminal record." Defense Counsel noted his objection.

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So.2d 1, 6. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. *Id.* A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Lawson*, 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622.

A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. *Smith*, *supra*. The issue on appeal is whether the trial court abused its broad discretion, not whether another sentence might have been more appropriate. *State v. Dorsey*, 07-67 (La. App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. *State v. Pearson*, 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656. In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. *Id.* Generally, maximum sentences are reserved for cases involving the most serious

violations of the offense charged and the worst type of offender. *State v. Melgar*, 19-540 (La. App. 5 Cir. 4/30/20), 296 So.3d 1107, 1115.

In determining a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions, but may properly review all prior criminal activity. *State v. Arceneaux*, 19-472 (La. App. 5 Cir. 1/29/20), 290 So.3d 313, 316, *writ denied*, 20-324 (La. 5/14/20), 296 So.3d 608. The sentencing court may rely on sources of information usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrest and conviction records. *State v. Myles*, 94-217 (La. 6/3/94), 638 So.2d 218, 219. These matters may be considered even in the absence of a proof the defendant committed the other offenses. *Arceneaux*, *supra*.

Here, Defendant was convicted of two counts of possession of a firearm by a convicted felon, which provides in pertinent part: "Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than five nor more than twenty years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars." *See* La. R.S. 14:95.1(B).

In *State v. Jones*, 01-539 (La. App. 3 Cir. 10/31/01), 799 So.2d 772, *writ denied*, 01-3310 (La. 12/13/02), 831 So.2d 975, the defendant argued that the sentence for his possession of a firearm by a felon conviction -- fifteen years at hard labor without benefit of parole, probation, or suspension of sentence, the maximum sentence at that time, plus the minimum fine of $1,000.00 -- was excessive. The appellate court found no error in the sentence imposed by the trial court (which believed a lesser sentence would depreciate the seriousness of the crime), considering the defendant's five prior felony convictions and the nature of his latest conviction.

In *State v. Caffrey*, 08-717 (La. App. 5 Cir. 5/12/09), 15 So.3d 198, *writ denied*, 09-1305 (La. 2/5/10), 27 So.3d 297, the trial court imposed the maximum

sentence at the time, fifteen years at hard labor without the benefit of parole, probation, or suspension of sentence, for possession of a firearm as a convicted felon. The defendant argued that he was not the worst type of offender and that he only had one prior conviction for possession of cocaine. In denying reconsideration of the sentence, the trial court considered that the gun in question was fully loaded, among other factors. This Court found that the sentence was not constitutionally excessive, taking into account the defendant's prior conviction for possession of cocaine, and the fact that he pled guilty to two additional drug offenses on the same date that he pled guilty to being a felon in possession of a firearm. *See also State v. Abram*, 743 So.2d at 903 (affirming the maximum sentences available imposed by the trial courts for possession of a firearm by a convicted felon where the defendants had an extensive criminal record); *State v. Charles*, 20-498 (La. App. 3 Cir. 5/5/21), 318 So.3d 356 (affirming the maximum sentences available imposed by the trial courts for possession of a firearm by a convicted felon in cases where the defendant was a fifth felony offender and a live round was found in the chamber of the firearm).

In the instant case, Sergeant Lynch testified that a bullet was found in the magazine of the Glock found at 721 Anson. She further testified that there was a live round chambered in the Ruger and that the Ruger's magazine was full.

Additionally, Defendant has a criminal history. The State presented evidence of Defendant's federal conviction of conspiracy to distribute and possession with intent to distribute a large quantity of drugs, namely, 280 grams or more of cocaine base (crack) and 500 grams or more of cocaine hydrochloride. Further, the State also introduced the certified conviction packet of Defendant's July 18, 2013 conviction for possession of heroin (Defendant was originally charged with possession with the intent to distribute heroin). Also, at the sentencing hearing, the prosecutor stated that Defendant had a 2006 conviction for possession of a

Schedule II controlled dangerous substance, and a 2010 conviction for possession of marijuana, second offense. The jurisprudence shows that similarly situated defendants, with substantial criminal records, received similar sentences to Defendant. *See Charles*, *supra*; *Caffrey*, *supra*; *Abram*, *supra*; *Jones*, *supra*.

In light of the foregoing, we find that the sentences imposed were not constitutionally excessive, and that the trial court did not err by denying Defendant's motion to reconsider the sentences.

*ERRORS PATENT*

The record was reviewed for errors patent according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990).

The trial judge failed to impose the mandatory fine imposed by La. R.S. 14:95.1(B): a fine of not less than one thousand dollars nor more than five thousand dollars. While an appellate court has the authority to correct an illegal sentence, this authority is permissive rather than mandatory. La. C.Cr.P. art. 882. In *Woods*, 376 So.3d at 1159, this Court pointed out that the trial court failed to impose the mandatory fine under La. R.S. 14:95.1. In that case, because the defendant was represented by the Louisiana Appellate Project, which represents indigent defendants in non-capital felony cases, this Court declined to exercise its discretion to remand the matter for imposition of the mandatory fine. *Id*.

In the instant case, Defendant has private counsel. As such, we remand the matter for the trial court to determine whether the mandatory fine should be imposed after a hearing is held under La. C.Cr.P. art. 875.1, which requires the court to conduct a hearing to determine whether payment of any fine, fee, cost, restitution, or monetary obligation would cause substantial financial hardship to the defendant or his dependents. *See State v. Johnson*, 23-401 (La. App. 5 Cir.

4/24/24), 386 So.3d 345, 353 (where this Court remanded the matter and ordered the trial court to comply with La. C.Cr.P. art. 875.1).

## *DECREE*

Considering the foregoing, Defendant's convictions and sentences are affirmed. The matter is remanded with instructions.

**AFFIRMED;**
**REMANDED WITH INSTRUCTIONS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 30, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-KA-50

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE NANCY A. MILLER (DISTRICT JUDGE)
DARREN A. ALLEMAND (APPELLEE)      THOMAS J. BUTLER (APPELLEE)      KEVIN V. BOSHEA (APPELLANT)

**MAILED**
ERIC CUSIMANO (APPELLEE)
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053